## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

**TALON WILDER, et al,**

     **Plaintiffs,**

**v.**                             **CASE No: 4:24-cv—305-RK**

**HONEYWELL FEDERAL**
**MANUFACTURING**
**& TECHNOLOGIES, LLC,**

     **Defendant.**

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 15(a)(2), with Defendant's written consent, the Named Plaintiffs Talon Wilder, Malachi Sanders, Gabe Maldonado, Richard Tuttle, Charlie Childress, Todd Sorensen, Seth Hartman, Kristin Ashford, Cody reed, Stephanie Cumpton, and Joshua Salmond, (collectively the "Named Plaintiffs") on behalf of themselves and all others similarly situated, (collectively "Plaintiffs") do hereby complain as follows and allege against Honeywell Federal Manufacturing & Technologies, LLC, (hereinafter "Defendant FM&T"):

## INTRODUCTION

1.    Plaintiffs comprise a group of current and former employees of Defendant FM&T, all subject to Defendant's COVID-19 vaccine mandate.

2.    Plaintiffs herein allege that FM&T's COVID-19 vaccine mandate is unlawful because it mandates the injection of the mRNA COVID-19 vaccine without actual accommodation of Plaintiffs' religious beliefs, as a condition of Plaintiffs' employment at FM&T (hereinafter the "Mandate").

3. The United States Supreme Court has long held that the right to refuse unwanted medical treatment is a fundamental human right.

4. FM&T mandated a company-wide COVID-19 vaccine injection in or around May of 2021, while only superficially granting exemptions for sincerely held religious beliefs.

5. Defendant's exemptions were not exemptions at all, and instead were a means to appear in compliance with Title VII of the Civil Rights Act while simultaneously avoiding reasonable accommodations for Plaintiffs' religious beliefs. Defendant's singling out of those employees, and the adverse actions taken against them as described herein, was intended to publicly shame them in front of their peers due to their sincerely held religious beliefs.

6. Plaintiffs seek to recover all available compensatory and punitive damages relating to FM&T's Mandate and related adverse employment actions and retaliation on account of their sincerely held religious beliefs warranting their non-vaccinated status and complaints.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 USC § 1331 and 1343, because it is a civil action concerning the civil rights of the Plaintiffs arising under the laws of the United States, and pursuant to 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12117(a) which confers jurisdiction in any judicial district in the state in which the unlawful employment practice is alleged to have been committed as well as the state in which the employment records relevant to the COVID-19 Mandate are maintained and administered.

8. This Court has personal jurisdiction over Defendant because Defendant FM&T, is headquartered in this district, and FM&T executives engaged in unlawful acts regarding the COVID-19 vaccine mandates through acts within the state of Missouri.

9.     Venue is proper for all Plaintiffs in the U.S. Western District of Missouri because the COVID-19 Vaccine Mandate at issue was executed by Defendant FM&T as to its employees in Missouri. Defendant FM&T received the COVID-19 Vaccine Mandate from Honeywell's corporate Human Resources in Charlotte, North Carolina, but enforced in Missouri. Thus the unlawful employment practice was committed in Missouri. Furthermore, the employment records relevant to the COVID-19 Vaccine Mandate and the Plaintiffs' compliance with it are maintained and administered in Missouri. Finally, pursuant to 42 U.S.C. § 2000e-5(f)(3), Defendant FM&T is headquartered in Missouri.

10.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

11.     This Court is authorized to grant Plaintiffs' prayer for relief regarding damages pursuant to Rule 54 of the Federal Rules of Civil Procedure.

**PARTIES**

12.     Plaintiffs comprise a group of current and former employees of Defendant FM&T, individually set out below, who were all subject to Defendant's COVID-19 vaccine mandate.

13.     Defendant Federal Manufacturing & Technologies, LLC, (hereinafter "Defendant FM&T") is a Delaware limited liability company with its principal place of business in Kansas City, Missouri. It is a subsidiary of Honeywell International, Inc., (hereinafter "Honeywell") which is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. Honeywell is a management member of Defendant FM&T. Defendant FM&T manages the United States Department of Energy's Kansas City National Security Campus.

14.     Honeywell sits at the epicenter of the centralized management and operation of Honeywell's businesses, where it exerts direct control over its subsidiaries. In fact, in 2004, the Defendant FM&T shared a Vice President Corporate Secretary and Deputy General Counsel, Thomas F. Larkins, who appointed Louis Giaccardo and Maureen Cullen to act as attorneys-in-fact for one hundred-seventy subsidiaries of Honeywell International, Inc., including Honeywell Federal Manufacturing and Technologies, LLC, as reflected in the filing of FM&T in the State of Missouri.

15.     Honeywell provides direction and controls the employment practices of its subsidiaries and thereby their employees, for such matters as the vaccine mandate and the process for requesting accommodations at issue here. In fact, the same accommodation request form was utilized for employees of both Defendant FM&T and Honeywell. And, Defendant FM&T utilized the same pre-formatted approval/denial form for those accommodation requests as Honeywell.

## FACTUAL BACKGROUND and GENERAL ALLEGATIONS

### Defendant FM&T's COVID-19 Vaccine Mandate

16.     In or around May of 2021, Defendant FM&T and Honeywell mandated that all of its employees receive the COVID-19 vaccine in accordance with the announced Executive Order 14042. As a subsidiary of Honeywell, the managing entity of the United States Department of Energy's Kansas City National Security Campus, Defendant FM&T executed Honeywell's COVID-19 vaccine mandate as prescribed by Honeywell. Thereafter, and as alleged herein, Defendant FM&T undertook coercive and unlawful measures to enforce the Mandate.

17.     On or around June 3, 2021, Honeywell initiated the "Honeywell Vaccination Challenge" for "U.S. ISC sites." This was announced by Evan van Hook, Corporate Vice President, Health Safety, Environment, Product Stewardship and Sustainability, ("Hook"), from

the corporate communications account, corpcomm2@honeywell.com account. Hook works for Honeywell in Charlotte, North Carolina.

18.     Specifically, if an employee disclosed that they had received the vaccine, Defendant represented that the disclosing employee would be entered into a drawing to win prizes, including a $5,000.00 cash prize.

19.     One such privilege of being vaccinated was "No testing required following close contact with a positive COVID-19 case."

20.     Defendant, however, prohibited non-vaccinated employees and non-disclosing employees from joining the contest.

21.     In fact, at least twenty-five (25) of Honeywell's locations, spread over thirteen (13) states, were tracked for their vaccination rate, including Missouri. On or around September 23, 2021, Torsten Pilz, Senior Vice President and Chief Supply Chain Officer, ("Pilz"), distributed the vaccination rates of these locations. Pilz works for Honeywell in Charlotte, North Carolina.

22.     On or around July 21, 2021, vaccinated employees were given green ESD badge holders denoting that they were "clean" or vaccinated. This was announced by Hook from the same communications account. Hook works for Honeywell in Charlotte, North Carolina.

23.     Additionally, Defendant FM&T mandated that all non-vaccinated employees wear badges with orange or red ESD badge holders and lanyards.

24.     Defendant informed their employees that it was mandatory only for non-vaccinated employees to wear a mask at all times in Defendant's facilities. Vaccinated employees with a green ESD badge holder were allowed to stop wearing masks and stop practicing any social distancing measures.

25.     In or about August 2021, Honeywell also sent harassing and threatening e-mails in an effort to coerce employees in offices in multiple states into receiving the COVID-19 vaccine regardless of their religious beliefs.

26.     On or around September 9, 2021, President Biden issued E.O. 14042 entitled "Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors." This order required that all employees who work on or in connection with a federal contract be fully vaccinated against COVID-19 or receive approval for a medical or religious exemption.

27.     For the next five months, despite the success of legal challenges against E.O. 14042, Defendant FM&T continued its Mandate without exception.

28.     In or around September 2021, Honeywell sent an e-mail to their unvaccinated employees, including those of Defendant FM&T, advising that they would be terminated if they were not fully vaccinated by December 8, 2022.

29.     In or around September 2021, Honeywell sent their unvaccinated employees, including those of Defendant FM&T, additional discriminatory and harassing emails compelling the non-vaccinated employees to receive the COVID-19 vaccine; implying in very clear language that any non-vaccinated person is a "threat to society." On September 25, 2021, Defendant informed its employees that those who did not receive a vaccine would be required to test weekly.

30.     On or around October 5, 2021, Honeywell notified all of their unvaccinated employees, including those of Defendant FM&T, that if they were not vaccinated by December 8, 2021, they would be terminated.

31.     On or around October 15, 2021, Defendant sent an email to all of Defendant FM&T's employees officially mandating that all employees receive the COVID-19 vaccine on or

before December 8, 2021. The directive came from the communications@kcnsc.doe.gov account and was marked as being from "Honeywell FM&T."

32.    The Mandate stated that employees, including those of Defendant FM&T would be terminated if they were not fully vaccinated by January 4, 2022.

33.    All announcements regarding the Mandate and any related restrictions, such as the weekly testing regimen for the religiously exempt employees, was sent from the "Corporate Communications" account and Defendant's Human Resources email.

34.    By and through the Mandate, Defendant supposedly permitted employees to obtain religious exemptions from the mandate, but as alleged hereinafter, that process was a sham, as Defendant never intended to actually exempt or reasonably accommodate any of their employees who request them and ultimately were motivated to avoid accommodating those employees and their religious exemptions.

35.    On or around October 13, 2021, Covert sent a corporate e-mail stating how "most" employees subject to the Mandate could apply for exemptions.

36.    However, the exemption form created by Honeywell was unnecessarily long. It consisted of eleven (11) questions, and made unreasonable inquiries including, "Do you regularly attend worship or other religious ceremonies? If so, when and how often?" Another question asked explanation of the religious belief. Another asked if the person had ever not followed that belief. Other questions required the applicant to disclose the vaccine history of the applicant's children. The form also required the applicant to submit a "Third-Party Attestation Letter" from a religious leader or another third party. If unable to provide the letter, the applicant "[m]ust explain why you are unable to do so below."

37. Even after answering the eleven questions, the exemption process was not complete. Applicants then had to complete the "Additional Information Required to Decide Employee Request for U.S. Religious Exemption / Accommodation Related to Covid-19 Vaccine." This form required the applicant to explain if they would or would not receive a vaccine in the future if one was developed without the use of aborted fetal cell lines. It also created a condition on approval of an exemption that the application will "[a]ttest in writing" that they would not use medications listed (deemed by Defendant to have been developed with aborted fetal cell lines) "for the duration of any granted exemption." The verification and accuracy page threatened the applicant with termination if they violated the attestation.

38. On or about October 25, 2021, Tausha Hammett, Senior Human Resources Generalist for "Honeywell, Contractor for the US Department of Energy's Kansas City National Security Campus, in Missouri, ("Hammett"), provided a "Covid Update by HR Team" that reiterated the policy for employees who are denied exemptions to receive a vaccine dose within five (5) days. This HR update came from Honeywell.

39. On or around October 29, 2021, additional mass communication was sent by Defendant's Human Resources to all employees within the above described "most" category, specifically that employees seeking an exemption from the Mandate on the basis of religion must complete a "Request for U.S. Religious Exemption/Accommodation Related to COVID-19 Vaccine" form on or prior to November 1, 2021.

40. On or about November 3, 2021, Eric Wollerman, "Honeywell FM&T President," sent a company-wide statement, again mandating the vaccination without mention of federal exemptions for religion or disability, saying:

> Nearly 20 percent of our workforce is not fully vaccinated and the
> time to get a vaccine is running out as the December 8 deadline

approaches. We are hosting an additional on-site clinic with the Johnson &amp; Johnson one-shot vaccine on Tuesday, November 9. You need to receive the Johnson & Johnson vaccine by Wednesday, November 24, to be fully vaccinated by Wednesday, December 8. We do all of our work in strict conformance with the Government's requirements. This vaccine mandate is such a requirement and we have to comply with it. The COVID-19 Task Force strongly encourages each of you to be vaccinated and remain part of our team, as you are vital to our success.

41. On or around November 12, 2021, Defendant, via an email from Mattimore, issued a company-wide OSHA Emergency Temporary Standard ("ETS") mass communication e-mail, with attention to the first and second paragraphs, stating that non-federal employees would be subject to the OSHA/ETS requirements. Notably, in this November 12, 2021, e-mail, the verbiage changed to state "all" employees, instead of the former "most."

42. Throughout the months of November 2021 and December 2021, Plaintiffs received daily emails from DocuSign demanding that they sign the Application on Exemption from Vaccination Mandate requiring employees to take weekly COVID-19 tests even if they worked remotely. Plaintiffs were warned through their respective managers that if they did not sign, they would be placed on unpaid leave indefinitely as early as January 2022.

43. On or about November 29, 2021, Covert announced that the January 4th deadline remained in place and that "there are no pending legal challenges to the mandate that would affect the timing, and Honeywell intends to fully comply with the Executive Order."

44. On or around December 7, 2021, the U.S. District Court for the Southern District of Georgia enjoined the federal government from enforcing E.O. 14042's COVID-19 vaccination mandate for federal government contractors and subcontractors on a nationwide basis, including Defendant.

45.    Also on December 7, 2021, Honeywell, through Tanya Hooper, Vice President, Global Talent and Corporate Human Resources, out of North Carolina, ("Hooper"), out of North Carolina, provided "Updated Talking Points to Enforce Jan. 4 Deadline," that stated Honeywell did not believe there were any legal challenges to the Executive Order and that "Honeywell is full complying with Executive Order 14042." The talking points were provided to "site leaders," including Defendant's, to use in meetings and for Human Resources leaders to use in "conversations with employees."

46.    Ironically, on the same date, December 7, 2021, Defendant announced that a surcharge of $500 would be imposed on the non-vaccinated employees' medical plan for 2022, and that the termination process against the non-vaccinated employees would commence on January 5, 2022.

47.    On or around December 15, 2021, Defendant's Human Resources department sent an e-mail to all employees that they would be proceeding with the Mandate, despite legal objections.

48.    On or around December 17, 2021, Honeywell's and Defendant FM&T's employees received an e-mail from Human Resources stating that if they did not comply with the testing requirement, they would be placed on an unpaid leave of absence, up to and including termination.

49.    The United States Supreme Court stayed the enforcement of E.O. 14042 (the "OSHA mandate") for large private employers on or around January 13, 2022.

50.    Yet, Defendant FM&T continued with the Vaccination Mandate. In fact, on or about January 4, 2022, Defendant FM&T sent an email to its employees that despite the nationwide injunction issued by the Southern District of Georgia on December 7, 2021, it would only "pause implementation" of the Mandate if the stay was not lifted by January 4, 2022. However, Defendant

also stated that "It is important to understand upon a lift of the injunction, should it lift, the mandate applies and will be immediately enforced on all employees." Thus, Defendant threatened employees to comply with the Mandate because failure to comply would result in termination on the day that any injunction was lifted. Despite the U.S. Supreme Court's stay on the enforcement of the EO 14042, Defendant's policy was that "despite legal challenges to the EO" "all employees" at Defendant's U.S. sites, whether Honeywell or Defendant FM&T's employees, were still mandated to receive the vaccine and upload proof that they have completed a vaccination regimen to Honeywell's database, unless there is an approved medical or religious exemption.

51.     On January 18, 2022, Defendant sent an email to its employees that weekly testing of those that were not fully vaccinated had begun and would continue despite "several federal courts hav[ing] enjoined the federal government from enforcing the vaccine mandate for federal contractor employees."

52.     Nonetheless, on February 9, 2022, Defendant FM&T commenced its discriminatory testing requirement for its non-vaccinated employees even if they worked remotely. Many employees were placed on unpaid leave and many employees were ultimately terminated. Indeed only after dozens of employees were terminated did Defendant "pause" the enforcement of the Mandate on or about February 23, 2022.

53.     Indeed, Defendant's actions towards Plaintiffs were not intended for safety measures but were, instead, designed to harass and punish Plaintiffs because they requested religious exemptions.

## Defendant FM&T's Code of Business Conduct

54.     Defendant issued a "Code of Business Conduct" (hereinafter the "Code") to all employees at the start of their employment. The goal of the Code is to uphold Defendant's commitment to integrity and ethics.

> The Honeywell Code of Business Conduct (our "Code") is designed to provide guidance to each of us regarding Honeywell's standards of integrity and compliance in all of our business dealings. Our Code is an integral element of the Honeywell Behaviors. It describes the basic rules of conduct that we, as One Honeywell, are expected to follow. In addition, provides helpful resources in the event we have a question or concern about proper conduct.

55.     The Code details penalties for employees who violate the code and exceeds the limitations of the law and is specific to Defendant and their employees.  Defendant expects that all employees, officers, and directors familiarize themselves with and follow the Code.  A failure to comply with the Code carries consequences including disciplinary action, including termination.

> Our Code applies to all employees, officers and directors of Honeywell. Where appropriate, business partners working on our Company's behalf should also familiarize themselves with and follow our Code. If your job responsibilities require you to interact with representatives working on behalf of Honeywell, be sure to inform them of their responsibility to act in accordance with this Code and provide them with a copy. Their behavior must be consistent with our Code, other Honeywell policies, and applicable laws and regulations.

56.     In the Code, Defendant commits to creating an inclusive working environment.

> Honeywell is committed to maintaining an inclusive, safe, and respectful working environment for all employees, regardless of gender, race, color, ethnic background, age, religious belief, national origin, affectional or sexual orientation, gender identity, disability, marital status, veteran status, citizenship or impending citizenship, or any other characteristic protected by law. Employees should be able to work and learn in a safe, yet stimulating atmosphere and Honeywell will not tolerate intimidating, hostile, abusive, or offensive behaviors in our workplace. Honeywell has zero tolerance

for such conduct, which will be considered harassment and is strictly prohibited.

57.     Defendant's Code explicitly prohibits retaliation, encourages its employees to feel comfortable asking questions and raising concerns, protects those who do raise concerns, and creates an explicit duty for them to do so.

> It is important that you feel comfortable raising your questions and concerns. Honeywell will not tolerate any form of retaliation against you for making a good faith report of actual or potential misconduct. Making a report in "good faith" means your report is honest, sincere, and complete to the best of your knowledge. If you feel an act of retaliation has occurred, you should report your concerns via one of the methods outlined in "Asking for Advice and Voicing Concerns."

> If you become aware of a situation that may involve a violation of this Code, Company policy or any applicable law, or regulation, you have a responsibility to report it. Please note that failure to comply with our Code and Company policies can have serious consequences. Consequences may include disciplinary action, up to and including termination, as well as possible civil or criminal penalties. Honeywell will treat all reports confidentially to the extent possible, consistent with the law, Company policy, and the Company's need to conduct a thorough investigation. Suspected violations may be reported by identifying yourself or by remaining anonymous. In Europe, specific processes have been implemented to comply with rules that limit anonymous reporting. You may contact the Integrity and Compliance Office with any questions.

> All reports will be investigated promptly and thoroughly, consistent with applicable law and, upon the advice and approval of the Law Department, may be reported to the appropriate authorities. Employees have a duty to cooperate with Company investigations concerning potential violations of the Code or applicable Company policies.

> Failure to cooperate fully in a Company investigation or the failure to be fully truthful when providing evidence or testimony in such investigation is grounds for disciplinary action, including termination. It should be emphasized that appropriate corrective or disciplinary action for Code violations will be taken whenever necessary.

58.     Defendant's Code further obligates them to protect its employees' personal data and only collect necessary personal data.

> We should only collect, access, use, or disclose personal data for appropriate business purposes. In addition, we should use the minimum amount of personal data needed to accomplish a task and avoid processing personal data if the objective of the processing can be achieved without processing personal data.

59.     Defendant's Code commits them to respecting human rights.

> Our Code, along with other Honeywell policies, establishes practices and standards that address a broad range of human rights and workplace issues. Honeywell respects and values the diversity reflected in our various backgrounds, experiences and ideas. Together, we provide each other a diverse and inclusive work environment that fosters respect for all of our coworkers and business partners. Refer to the section titled "Respecting Each Other and Promoting a Positive Workplace" for more information.

60.     Despite its Code of Conduct, Defendant FM&T disparately treated Plaintiffs who requested exemptions from its Mandate based on their sincerely held religious beliefs by: (1) having vaccinated employees wear green identification badges and lanyards and mandating that non-vaccinated employees wear white or yellow identification badges; (2) receiving daily harassing emails and memorandums to pressure him into receiving the vaccine and mandating that he sign off on a list of accommodations including a statement that he would receive the vaccine if one was developed and produced without the use of aborted fetal cell lines, without question; (3) mandating the use of protective personal equipment when others did not have to do so; (4) mandating weekly testing when others did not have to do so despite breakthrough infections of vaccinated employees; (5) not being given new projects to work on or the better projects to work on; (6) being placed on mandatory unpaid administrative leave; and (7) not engaging in an interactive process when it comes to religious or medical exemptions.

**Sincerely Held Religious Beliefs**

61.     Plaintiffs object to receiving a COVID-19 "vaccination" based on their sincerely held religious beliefs.

62.     Plaintiffs' sincerely held religious beliefs are that (1) opposition to abortion and the use of fetal cell lines in the development of the vaccine; (2) belief that the mRNA technology utilized in some COVID-19 vaccines usurps God's creation of the human genome; and (3) that the body is a temple and taking the vaccine would defile that temple.

63.     Plaintiffs' sincerely held religious beliefs, preclude them from accepting any one of the three currently available COVID-19 "vaccines" as they are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6. Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their bodies, regardless of the perceived benefit or rationale.

64.     All of the Plaintiffs complained that Defendant's Mandate constituted religious discrimination. For instance, each of the Plaintiffs complained that requiring them to complete a seven page questionnaire to educate Defendant about their religious beliefs was a discriminatory act. Further, each of the Plaintiffs complained that requiring them to find a third-party to attest to their religious beliefs was religious discrimination. All of the Plaintiffs further complained that having to complete and additional questionnaire regarding their and their children's medical history, in addition to the original seven pages, was further discrimination. Finally, each of the Plaintiffs complained that Defendant's required conditions, including but not limited to, a future commitment to take a vaccine if Defendant determined it was not developed with the use of aborted fetal cell lines, without any other context, was religious discrimination.

**Defendant's Denial of Plaintiffs' Accommodation Requests**

65.     Plaintiffs were harassed and placed in a hostile work environment through Defendant's Mandate and mandatory disclosure and display of vaccination status.

66.     Defendant's management created a discriminatory environment as a result of the Mandate that impacted Plaintiffs' ability to work.

67.     Defendant broadcasted Plaintiffs' private information on internal memorandums, bulletin boards, other communications, and visibly-designated red badges and lanyards designed to shame and segregate the unvaccinated from the vaccinated.

68.     Plaintiffs were not allowed to be in the same rooms as those who were vaccinated, and if they were required to be in the same room, only the Plaintiffs were required to wear facemasks covering both nose and mouth, identifying their status as unvaccinated thus creating a visible and isolating barrier between Plaintiffs (and other unvaccinated employees) and his/their vaccinated co-workers.

69.     Plaintiffs were sent almost daily e-mails threatening termination if they did not comply with the Mandate.

70.     Defendant FM&T brought in medical staff at one of its locations to administer the COVID-19 vaccine and stated that if the non-vaccinated were not vaccinated by approximately noon, that they would all be terminated. Some employees were coerced by Defendant FM&T into foregoing their religious beliefs and receiving the vaccine to save their livelihood. However, at approximately 1:30 p.m. that same day, Defendant  FM&T reversed course - after those employees met the first deadline thus selling out their faith – and stated that it was pushing the vaccination deadline out a couple of weeks.

71.     At other Honeywell locations, unvaccinated employees were segregated and isolated from their vaccinated co-workers. For example, at one location, unvaccinated employees were made to use port-a-potties outside and were made to eat lunch outside, with no air conditioning and/or heat. This was all part of Honeywell's avoidance of accommodating Plaintiffs' religious beliefs, including those that worked for Defendant FM&T.

72.     For instance, Defendant required their exempted employees to display their vaccination status by way of color-coded identification badges that came with privileges, and utilize separate common areas for bathrooms and lunch breaks.

73.     Defendant only conditionally approved exemptions by requiring them to adhere to their burdensome weekly testing regimen with unpaid leave as punishment for failing to do so - even for those employees that worked remotely from their own residence.

74.     In fact, the weekly testing regimen did not exist at all until employees like Plaintiffs requested exemptions. In other words, employees were coming to work, albeit masked, but without any testing prior to the exemption process.

75.     The weekly testing regimen was designed to maximize inconvenience for the exempted employees by prohibiting at-home tests and requiring the exempted employee to travel to a medical site and have the test proctored during non-working hours and paid for by the exempted employee.

76.     Further the exempted employees who were even just a minute late on uploading the result to the application site, were placed on unpaid leave for no less than a week as punishment – even if they had the test completed.

77.     More so, the weekly testing regimen included that, "You may not use vacation or work from home during any unpaid suspension." Even inadvertent non-compliance resulted in a loss of a week's pay.

78.     In fact, Ryan Bingham, Vice President of Human Resources for Honeywell, ("Bingham"), admitted that not all exempted employees had to comply with the weekly testing. Specifically he stated that delaying testing was due to logistics and "[that] is why we are requiring weekly testing for the vast majority of employees with vaccination exemptions." {emphasis added}. The same sentiment was expressed by Defendant FM&T's Human Resources Generalist Megan Flax, ("Flax") in Missouri.

79.     Furthermore, Bingham also admitted that Defendant believed "People who get vaccine breakthrough infections can be contagious but are less likely than unvaccinated people to be hospitalized or die from COVID-19." Thus, testing only the vast majority of those with exemptions when everyone could be contagious had little to do with safety and everything to do with coercing employees to take the vaccine.

80.     Even Kevin Covert, Vice President of Human Resources for Honeywell, ("Covert"), threatened to continue the weekly testing for just one employee out of Texas in response to his complaints.

81.     Plaintiffs were ultimately put in a position to choose between their livelihoods and their beliefs by requiring that Plaintiffs comply with the Mandate and, further, to disclose their vaccination status, or be placed on unpaid leave from their positions, creating an intimidating and harassing environment within the workplace.

## INDIVIDUAL PLAINTIFFS

### *Talon Wilder*

82.     **Named Plaintiff TALON WILDER** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

83.     Plaintiff Wilder was terminated from his employment on or about February 9, 2022, after requesting a religious exemption from the Mandate.

84.     Plaintiff Wilder requested an exemption in October 2021 but that process required him to disclose the names of his fellow parishioners and agree to forego any future requests for exemptions if a vaccine was developed without the use of aborted fetal cell lines.

85.     Plaintiff Wilder, still not having his exemption approved, again requested a religious exemption by calling Human Resources.

86.     Plaintiff Wilder complained via email to Meghan Mohler, Human Resources Manager at Kansas City National Security Campus, on or about December 20th and 21st, 2021, that the Mandate was religious discrimination.

87.     Defendant finally conditionally approved the exemption and required Plaintiff Wilder to comply with weekly testing regimen, and agree to forgo his future rights to request exemptions if a vaccine was developed without the use of aborted fetal cell lines.

88.     Plaintiff Wilder complained again to Mohler that the weekly testing requirement constituted religious discrimination.

89.     Plaintiff Wilder was given no choice but to accept those conditions for his exemption on or about January 10, 2022.

90.     On or about January 10th and 12th, 2022, Plaintiff Wilder again complained that the weekly testing violated his religious beliefs and constituted religious discrimination.

91.     Plaintiff Wilder complained that Defendant's weekly testing was intended to burden those seeking exemptions from Defendant's mandate. For instance, Plaintiff Wilder was purportedly sent home one week for not testing but then allowed to return to work without testing the next week. On February 7, 2022, Plaintiff Wilder was met by his supervisor in the lobby and again objected to the testing on religious grounds. He specifically told his direct supervisor that it was discrimination. The supervisor then sent Plaintiff Wilder home on suspension.

92.     Plaintiff Wilder asked his supervisor to send him an email at least acknowledging that he showed up on time and refused the testing on religious grounds, to which his supervisor replied, "Oh, no. I'm not getting fired."

93.     Plaintiff Wilder was placed on unpaid leave for two weeks. Plaintiff Wilder was suspended during the week of January 17th through the 21st of 2022. Then, Plaintiff Wilder was allowed to return to work the week of January 24th through the 28th, 2022 without being required to submit any COVID-19 test results. Subsequently, Defendant suspended Plaintiff Wilder again without pay for the week of January 31st through February 4th, 2022.

94.     Defendant admitted that their actions were to comply with the Executive Order even after a nation-wide preliminary injunction was granted in December. Mohler informed Plaintiff Wilder that "upon a lift of the injunction against the federal government," he would be terminated if not vaccinated or had a valid exemption.

95.     Plaintiff Wilder submitted a complaint to Defendant's Human Resources that he was receiving disparate treatment because of his religious beliefs but no remedial action was taken.

96.     Plaintiff Wilder was terminated on February 9, 2022.

97.     Plaintiff Wilder filed a charge of discrimination with the EEOC on or about June 2022, alleging he was discriminated against due to his religion and perceived disability status.

Further, Plaintiff Wilder alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

98.     Plaintiff Wilder received his Notice of Right to Sue on or around July 21, 2022.

99.     Plaintiff Wilder exhausted his administrative remedies.

*Malachi Sanders*

100.    **Named Plaintiff MALACHI SANDERS** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

101.    Plaintiff Sanders was placed on unpaid administrative leave and then ultimately terminated on February 9, 2022, from his employment after requesting a religious exemption from the Mandate in December 2021.

102.    Plaintiff Sanders complained to his direct supervisor, Dan Comunale, that the Mandate was religious discrimination.

103.    Plaintiff Sanders complained about Defendant's exemption process on or about October 28, 2021, because the exemption process required him to disclose the names of his fellow parishioners and attest, without question, that he would receive a vaccine in the future if one was developed and produced without the use of aborted fetal cell lines. For instance, Plaintiff Sanders repeatedly stated that Defendant's invasive questions as to his request for a religious exemption were "a form of harassment."

104.    Plaintiff complained to Defendant's Human Resources regarding Defendant's singling out of non-vaccinated employees, but no remedial action was taken.

105.    On or about December 20, 2021, Plaintiff Sanders complained to Mohler, Defendant's Human Resources Generalist. Plaintiff Sanders complained that the Executive Order,

from which Defendant was deriving its policies, had been preliminarily enjoined by a federal court. Plaintiff Sanders complained that Defendant's Mandate was religious discrimination.

106. On December 22, 2021, Plaintiff Sanders again complained to Mohler about the weekly testing requirements for those with religious exemptions. Specifically, Plaintiff Sanders stated, "It is discriminatory, as described, to test only the unvaccinated…I am under the assumption that the interactive process continues until all questions are answered and all issues are resolved."

107. On February 4, 2022, Plaintiff Sanders complained again to Mohler that Defendant's weekly testing requirement of only those with religious exemptions is discrimination.

108. Plaintiff Sanders filed a charge of discrimination with the EEOC alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Sanders alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

109. Plaintiff Sanders received his Notice of Right to Sue on or around July 21, 2022.

110. Plaintiff Sanders exhausted his administrative remedies.

### Gabe Maldonado

111. **Named Plaintiff GABE MALDONADO** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

112. Plaintiff Maldonado was constructively discharged on or about June 7, 2022, from his employment after requesting a religious exemption from the Mandate.

113. At first, Defendant informed Plaintiff Maldonado that no employees in his role would receive an accommodation even if they had a sincere religious belief. Defendant eventually changed course and agreed to receive requests for religious exemptions.

114.    When Plaintiff Maldonado submitted his request for a religious exemption, Defendant made him sit for an interview about his religious beliefs.

115.    Defendant purportedly granted Plaintiff Maldonado's exemption but then placed him on unpaid administrative leave for not complying with Defendant's weekly testing requirement.

116.    Plaintiff complained on or about June 3, 2022, that the daily testing requirement also violated his religious beliefs.

117.    Defendant continued to subject Plaintiff Maldonado to its daily testing requirement only on Plaintiff Maldonado.

118.    Defendant continued to retaliate against Plaintiff Maldonado by isolating him from his co-workers, and sending daily emails threatening termination if he did not comply with the vaccine mandate.

119.    Plaintiff Maldonado complained again about the ongoing retaliation due to his religious exemption, but no remedial action was taken.

120.    Plaintiff Maldonado filed a charge of discrimination with the EEOC alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Maldonado alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

121.    Plaintiff Maldonado received his Notice of Right to Sue on or around July 14, 2022.

122.    Plaintiff Maldonado exhausted his administrative remedies.

### *Richard Tuttle*

123.    **Named Plaintiff RICHARD TUTTLE** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

124.   Plaintiff Tuttle requested a religious beliefs exemption from Defendant's Mandate in October 2021. Defendant approved the exemption in December 2021 but required Plaintiff to agree to a list of mandatory conditions such as masking, social distancing, and the weekly testing regimen. Plaintiff Tuttle was also required to attest in writing that he would receive a vaccine in the future if one was developed without the use of aborted fetal cells, even though his religious objections exceeded those grounds for not taking the vaccine.

125.   Plaintiff Tuttle was further discriminated against by way of being continuously harassed by Defendant's Human Resources and upper management to receive the vaccine.

126.   Plaintiff complained that the weekly testing requirement also conflicted with his religious beliefs.

127.   Plaintiff complained that Defendant's condition for weekly testing when vaccinated employees did not have to do so was religious discrimination.

128.   Plaintiff Tuttle complained to Defendant about its discriminatory exemption process and disparate treatment and was placed on unpaid leave in January 2022.

129.   Prior to his complaint, Defendant's Human Resources would at least respond but then stopped altogether discussing the conditions for Plaintiff Tuttle's religious exemption.

130.   Plaintiff Tuttle was terminated on February 9, 2022, while on unpaid leave.

131.   Plaintiff Tuttle filed a charge of discrimination with the EEOC in June 2022 alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Tuttle alleged that he was retaliated against for requesting the exemption and complaining about the disparate treatment.

132.   Plaintiff Tuttle received his Right to Sue from the Missouri Commission on Human Rights on or about September 29, 2022.Plaintiff Tuttle has exhausted his administrative remedies.

*Charlie Childress*

133.  **Named Plaintiff CHARLIE CHILDRESS** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

134.  Plaintiff Childress began working for Defendant in March 2018 and was constructively discharged from his employment on or around December 3, 2021, after requesting a religious exemption from the Mandate.

135.  Plaintiff Childress complained that its exemption process was itself discriminatory. For instance, Plaintiff Childress had to complete a ten page questionnaire and several lengthy inquiries about his religious beliefs.

136.  Plaintiff Childress was then forced to agree to Defendant conditions for a religious exemption including weekly testing which he also complained conflicted with his religious beliefs.

137.  After he complained, Plaintiff Childress endured repeating questioning about his religious exemption status, including from his immediate supervisor Kenneth Moore.

138.  Plaintiff Childress continued to receive harassing and threatening emails coercing him to receive the vaccine.

139.  Plaintiff was also forced to continue complying with the weekly testing of those that received religious exemptions despite his objections to the testing on religious grounds. Having received no response to his complaint that the testing conflicted with his religious beliefs, Plaintiff Childress was compelled to resign.

140.  Plaintiff Childress was constructively discharged on or about December 3, 2021.

141.  Plaintiff Childress filed a charge of discrimination with the EEOC in June 2022 alleging he was discriminated against due to his religion and perceived disability status. Further,

Plaintiff Childress alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

142. Plaintiff Childress received his Notice of Right to Sue on or around July 21, 2022.

143. Plaintiff Childress exhausted his administrative remedies.

*Todd Sorensen*

144. **Named Plaintiff TODD SORENSEN** is an individual and former employee of Defendant FM&T and a resident of the State of Missouri.

145. Plaintiff Sorensen began working for Defendant in 2019.

146. Plaintiff Sorensen requested a religious exemption from the Mandate on or about November 2021.

147. Defendant conditionally approved the exemption in December 2021 requiring Plaintiff Sorensen to conduct weekly testing and attest to not use over-the-counter medications that Defendant listed has having used fetal cell lines in their development, production, or testing, "for the duration [of] any granted exemption."

148. Plaintiff Sorensen objected to the conditions Defendant imposed for him to obtain a religious exemption from the Mandate. For instance, the list of medications Defendant attempted to have Plaintiff Sorensen commit to not using predated the alleged fetal cell line Defendant claimed was used in their development.

149. On or about November 11, 2021, Plaintiff Sorensen also complained that Defendant exemption process was in itself religious discrimination. Defendant required Plaintiff Sorensen to answer a ten-page questionnaire about his religious beliefs, then answer follow up questions, and then requested to complete Defendant's additional forms titled "Additional Information Required

to Decide Employee Request For U.S. Religious Exemption / Accommodation Related to Covid-19 Vaccine."

150.    Plaintiff Sorensen then requested to work from home as the accommodation for his religious exemption as he had done for nearly a year and a half. Defendant denied that request.

151.    Plaintiff Sorensen was further discriminated against by way of being continuously harassed by Defendant's Human Resources and upper management to receive the vaccine. As a condition of Plaintiff Sorensen's exemption, he was required to agree to receive the vaccine, without question, if one was developed and produced in the future without the use of aborted fetal cell lines.

152.    Plaintiff Sorensen complained to Defendant about its discriminatory exemption process and disparate treatment based on his religion, including having to wear a certain colored identification badge and submit to weekly testing for exempted employees.

153.    Defendant continued its discrimination of Plaintiff Sorensen by refusing his work from home request, making him wear a different colored identification badge, sending daily emails inquiring about his vaccination status, enduring questions from his management about whether he would get the vaccine, and submitting to weekly testing that required him to go to an off-site location during non-work hours to be tested and paid for by Plaintiff Sorensen.

154.    Plaintiff Sorensen was constructively discharge in or about January 2022.

155.    Plaintiff Sorensen filed a charge of discrimination with the EEOC in June 2022 alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Sorensen alleged that he was retaliated against for requesting the exemption and complaining about the disparate treatment.

156.    Plaintiff Sorensen received a Right to Sue from the EEOC on or about September 7, 2022.

157.    Plaintiff Sorensen has exhausted his administrative remedies.

*Seth Hartman*

158.    **Named Plaintiff SETH HARTMAN** is an individual and current employee of Defendant FM&T and a resident of the State of Missouri.

159.    At first, before the Defendant's Mandate deadline, Defendant informed Plaintiff Hartman's manager and his manager's manager of his vaccination status.

160.    Then Defendant had Plaintiff Hartman pulled into his senior level boss' office so that he could read a statement to Plaintiff Hartman telling him he would be terminated if he did not receive the vaccine or seek an exemption.

161.    Plaintiff Hartman requested a religious exemption from Defendant's Mandate in October 2021 and was conditionally approved in December 2021.

162.    In his exemption request, Plaintiff Hartman complained that the multiple and often long, ten pages, questionnaires constituted religious discrimination. Plaintiff Hartman answered many of the questions as "N/A." Defendant Human Resources told him he was doing so at his own risk, thereby threatening his job.

163.    Plaintiff Hartman was required to wear a certain colored identification badge and to agree to weekly testing when other unvaccinated employees were not required to do so.

164.    Plaintiff Hartman complained to Defendant through his manager and Human Resources that its exemption process with its long and invasive questions as well as the exemption condition of weekly testing and its terms constituted religious discrimination.

165.     Plaintiff Hartman complained to Defendant that the weekly testing and its terms were punitive in nature because Defendant prohibited the use of at-home tests even though they were being dispersed to the public by the federal government. Furthermore, Defendant required testing even if the employee was out of the office, for work or personal reasons.

166.     Plaintiff Hartman attempted to speak with Human Resources by phone about the exemption and its conditions but was told that they were uncomfortable and going to end the call.

167.     Plaintiff Hartman then tried to speak with Defendant's COVID Task Force but they refused.

168.     Defendant refused Plaintiff Hartman's request to be exempted from the condition of weekly testing.

169.     Plaintiff Hartman is subject to the continued and future enforcement of Defendant's Mandate so long as he remains employed by Defendant.

170.     Plaintiff Hartman has filed a charge of discrimination with the EEOC alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Hartman alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

171.     Plaintiff Hartman exhausted his administrative remedies.

### *Kristin Ashford*

172.     **Named Plaintiff KRISTIN ASHFORD** is an individual and current employee of Defendant FM&T and a resident of the State of Texas.

173.     Plaintiff Ashford began working for Defendant FM&T in February 2018.

174.     Plaintiff Ashford requested a religious exemption from Defendant's Mandate in October 2021 and was conditionally approved.

175. Plaintiff Ashford complained to Defendant that its exemption process constituted religious discrimination because, for instance, it asked questions about her children's medical history.

176. Plaintiff Ashford completed the ten page questionnaire and then Defendant had her complete another three page "Additional Information" questionnaire. In this document, Defendant required Plaintiff Ashford to agree to not use any medication from a list provided by Defendant purportedly because they believed those medications were developed with aborted fetal cell lines. Defendant made this commitment a condition of Plaintiff Ashford's exemption.

177. In her exemption request, Plaintiff Ashford asked Defendant to provide more information about its question regarding her future amenability to a future vaccine if one was developed without aborted fetal cell lines. Defendant did not answer and instead made a condition of her exemption to be that Plaintiff Ashford would commit to taking a future hypothetical vaccine if one is developed without aborted fetal cell lines.

178. Defendant also made Plaintiff Ashford come in to see Human Resources and be interviewed during which she was spoke to as if she was a deviant and questioned for her beliefs.

179. As another condition of its approval, Defendant required Plaintiff Ashford, to comply with weekly testing in accordance to its rules, i.e. at a medical location, during non-working hours, and paid for by Plaintiff Ashford. Defendant required this of her even though Plaintiff Ashford was approved by Defendant to work from home.

180. Further Defendant required Plaintiff Ashford to wear a mask despite Plaintiff Ashford having an approved accommodation from masking due to a disability. Plaintiff Ashford feared she would lose her job and was hospitalized for a week due to the stress and anxiety it caused.

181.     Plaintiff Ashford is subject to the continued and future enforcement of Defendant's Mandate so long as she remains employed by Defendant.

182.     Plaintiff Ashford filed a charge of discrimination with the EEOC in May of 2022 alleging she was discriminated against due to her religion and perceived disability status. Further, Plaintiff Ashford alleged that she was retaliated against for requesting an exemption and complaining about the disparate treatment.

183.     Plaintiff Ashford was required to continue complying with the weekly testing regimen even though she worked from home, and wear a mask even though she had an accommodation to not do so.

184.     Plaintiff Ashford received her Notice of Right to Sue on or around September 2, 2022.

185.     Plaintiff Ashford exhausted her administrative remedies.

### *Cody Reed*

186.     **Named Plaintiff CODY REED** is an individual and current employee of Defendant FM&T and a resident of the State of Missouri.

187.     Plaintiff Reed requested a religious exemption from Defendant's Mandate and was conditionally approved.

188.     Defendant required Plaintiff Reed to comply with its weekly testing requirement, off-site, at a medical location, during non-working hours, and paid for by Plaintiff Reed.

189.     Plaintiff Reed complained to his management because Defendant required Plaintiff Reed, and the other religiously exempted employees, to test weekly even though the vaccinated employees did not have to do so.

190.    Defendant denied Plaintiff Reed's paid time off that was offered to those who received the vaccine and became ill.

191.    Plaintiff Reed filed a charge of discrimination with the EEOC in April 2022 alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Reed alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

192.    Defendant continued to require Plaintiff Reed to comply with the weekly testing, wear a different colored badge, and was forced to use paid time off to avoid being terminated.

193.    Plaintiff Reed is subject to the continued and future enforcement of Defendant's Mandate so long as he remains employed by Defendant.

194.    Plaintiff Reed received his Notice of Right to Sue on or around July 21, 2022.

195.    Plaintiff Reed exhausted his administrative remedies.

### Stephanie Cumptom

196.    **Named Plaintiff STEPHANIE CUMPTON** is an individual and current employee of Defendant FM&T and a resident of the State of Missouri.

197.    Plaintiff Cumpton began working for Defendant in March 2016.

198.    Plaintiff Cumpton requested a religious exemption from Defendant's Mandate in October 2021 and was conditionally approved in December 2021.

199.    However, as part of its approval, Defendant required accommodations of Plaintiff Cumpton, including weekly testing even though Plaintiff Cumpton was approved by Defendant to work from home.

200.    Plaintiff Cumpton complained about the disparate treatment she received to Defendant's Human Resources on account of her religious beliefs. However, Defendant did not respond to her complaints.

201.    Plaintiff Cumpton also applied for a second religious exemption from the weekly testing but was immediately denied by Defendant without any interactive process.

202.    Further, in May 2022, Plaintiff Cumpton applied for but was denied a promotion. In fact, on May 10, 2022, her supervisor informed her that she had created a new position just for Plaintiff Cumpton to handle the upcoming expected work. It was due to be a considerable increase in pay. On May 13, 2022, she applied officially. Instead, Defendant hired a vaccinated employee that lacked the experience for the position. Defendant then asked Plaintiff Cumpton to train the employee. The vaccinated employee openly struggled to understand the training provided by Plaintiff Cumpton. The only difference between Plaintiff Cumpton and the hired employee was that Plaintiff Cumpton had a religious exemption for the Mandate and the hired employee did not and was vaccinated.

203.    Defendant continued to require Plaintiff Cumpton to comply with weekly testing even though she worked from home, and pursuant to Defendant Human Resources Generalist, Megan Flax, even if she tested positive but could still work, she was permitted to do so.

204.    Plaintiff Cumpton is subject to the continued and future enforcement of Defendant's Mandate so long as she remains employed by Defendant.

205.    Plaintiff Cumpton filed a charge of discrimination with the EEOC in June 2022 alleging she was discriminated against due to her religion and perceived disability status. Further, Plaintiff Cumpton alleged that she was retaliated against for requesting an exemption and complaining about the disparate treatment.

206.    Plaintiff Cumpton received her Notice of Right to Sue on or around July 18, 2022.

207.    Plaintiff Cumpton exhausted her administrative remedies.

*Joshua Salmond*

208.    **Named Plaintiff JOSHUA SALMOND** is an individual and a current employee of Defendant FM&T and a resident of the State of Missouri.

209.    Plaintiff Salmond began working for Defendant in July 2001.

210.    Plaintiff Salmond requested a religious exemption from Defendant's Mandate in October 2021 and was conditionally approved in December 2021 (even after the Eleventh Circuit Court of Appeals voted on December 17, 2021, to continue the injunction of EO 14042 against federal contractors and the Department of Energy officially stated they would take no action to enforce the vaccine mandate on their contractors). Defendant's exemption process was long and arduous and included a 7-page exemption request form initially followed by a two page request for supplemental questions that were provided to Plaintiff Salmond on November 1, 2021 and due to Defendant on the same day. Defendant required Plaintiff to educate them about his religious beliefs in a multiple pages. Defendant required Plaintiff to have a third-party attest to his religious beliefs. Further, Defendant required Plaintiff to submit responses to supplemental questions it posed that required medical research. For instance, Defendant inquired if Plaintiff Salmond would commit to receiving the vaccine if one was developed in the future without the use of aborted fetal cell lines. Plaintiff Salmond responded that he could not commit to that now because the details of such a scenario are hypothetical and unknown. Additionally, Defendant inquired if Plaintiff would commit to not using over-the-counter medications that it deemed to have been developed with aborted fetal cell lines. Plaintiff provided twelve resources to Defendant to advise it was wrong but received no response.

211. However, as part of its approval, Defendant required accommodations of Plaintiff Salmond, including weekly testing, continued use of face coverings and social distancing at all times when inside. As part of the weekly testing requirements, Defendant made the conditions as difficult as possible including prohibiting at-home tests, requiring Plaintiff Salmond to pay for the test, and requiring the test to be done on non-work time (whereas those getting the vaccine were able to utilize paid time off in excess of their accrual). Further, failure to comply came with punishment, as opposed to means for compliance. Specifically, Defendant stated that non-compliance meant "[y]ou will be placed on an unpaid suspension for the entire following week, whether or not you submit a test after noon on Thursday for that work week. You may not use vacation or work from home during any unpaid suspension." Defendant even made clear that "Business travel, working from home, etc. are NOT legitimate excuses to miss testing requirements." Such conditions emphasized the inconvenience intended as opposed to the supposed health and safety concerns Defendant alleged.

212. As a further condition of Defendant's approval of Plaintiff's accommodation, despite Plaintiff's response to its Supplement Inquiries regarding the same, Defendant required Plaintiff Salmond to commit to receiving a vaccine within five days' notice in the future if on was "developed" without the use of fetal cell lines and approved on an Emergency Use Authorization or full approval by the U.S. Food and Drug Administration. Defendant conditioned its approval on the preclusion of any further requests for accommodation and warned of termination for failing to adhere to this future commitment.

213. Plaintiff Salmond complained about the disparate treatment he received to Defendant's Human Resources on account of his religious beliefs. He requested to remove the condition of his commitment to receiving a vaccine in the future if deemed by Defendant as being

developed without the use of aborted fetal cell lines, but Defendant ignored his request. Instead, Defendant responded, in part, with further threats stating, "As I said initially, we remain ready to engage with you about the accommodations being offered. For example, an unpaid leave of absence may also be an alternative if that's something you'd like to consider."

214. Defendant continued to require Plaintiff Salmond to comply with weekly testing. Once the Executive Orders were deemed unconstitutional, Defendant then turned to the OSHA executive order and relied on its supposed status as a private company to do what they wanted. Once the OSHA executive order was deemed unconstitutional, Defendant went back to the reason that the building being was owned by the government. This continual change of direction is indicative of Defendant's intent to avoid accommodating religious beliefs.

215. Plaintiff Salmond filed a charge of discrimination with the EEOC in July 2022 alleging he was discriminated against due to his religion and perceived disability status. Further, Plaintiff Salmond alleged that he was retaliated against for requesting an exemption and complaining about the disparate treatment.

216. Plaintiff Salmond received his Notice of Right to Sue on or around February 14, 2024.

217. Plaintiff Salmond exhausted his administrative remedies.

## CLASS ACTION SPECIFIC ALLEGATIONS

218. Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

219. Through this action, Plaintiffs seek to represent the following Class:

All FM&T current or former employees who (1) between May of 2021 and the present objected to FM&T's Mandate because of sincerely held religious beliefs or disability exemption and/or accommodation from its Vaccine Policy requiring COVID-19 vaccination; and (2) who were placed on unpaid administrative leave,

discharged, constructively discharged, retaliated against, or resigned, due to their religious beliefs against the COVID-19 vaccine.

## A. Rule 23(a)

### Numerosity

220. The exact number of members of the class is not precisely known, but there are currently over 1,000 employees at FM&T. Out of those employees, over 50 employees thus far have requested medical or religious exemptions. Because of the large number of class members, joinder of individual class members is impracticable.

### Commonality

221. Common questions of law and fact exist as to all members of the putative classes and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

    a. Whether FM&T has a policy and/or practice of not conducting an individualized assessment of all exemption requests from its Mandate;

    b. Whether FM&T has a policy and/or practice of not engaging in an interactive process when it comes to reasonable accommodations involving its Mandate;

    c. Whether FM&T has a policy and/or practice of taking adverse action against employees who do not receive the COVID-19 vaccine;

    d. Whether FM&T has a policy and/or practice of segregating and marking employees that have not received the COVID-19 vaccine;

    e. Whether FM&T has a policy and/or practice of coercing compliance with the COVID-19 vaccine by threatening or taking adverse action against employees who seek exemptions from its Mandate; and,

    f. Whether FM&T's policies and/or practices regarding its Mandate violates the FM&T Class members their rights under Title VII of the Civil Rights Act or the Americans with Disabilities Act.

**Typicality**

222.     The claims alleged by the Named Plaintiffs and the resultant harms are typical of the claims of each member of the proposed class. Typicality exists because all absent class members have been injured, or are at risk of injury, as a result of the same policies and/or practices. Defendant's Mandate is a singular policy or practice requiring the COVID-19 vaccine without exception for the Class Members' sincerely held religious beliefs and disability status are typical of the Class Members.  FM&T's failure to provide reasonable accommodations to those who are not vaccinated and its failure to engage in an interactive process involving reasonable accommodations resulted in Defendant FM&T taking adverse action against class members who have not received the COVID-19 vaccine.

**Adequacy**

223.     The Named Plaintiffs will fairly and adequately protect the interests of the class. There are no conflicts of interest between the Named Plaintiffs and the other class members.

224.     The Named Plaintiffs have retained counsel with extensive experience litigating complex employment action lawsuits in federal court. Named Plaintiffs' counsel have committed sufficient resources to represent the class. Named Plaintiffs' counsel therefore are well suited to fairly and adequately represent the class's interests.

**B.  Rule 23(b)(2)**

225.     Defendant have acted or failed to act on grounds generally applicable to the class, necessitating declaratory and injunctive relief for the class. Named Plaintiffs' counsel know of no conflicts among the class members.

# CAUSES OF ACTION

## COUNT I

## Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII")

### *Religious Discrimination Failure to Accommodate*

226.     Plaintiffs reallege and incorporate paragraphs 1-49 and 54-225 above as if fully set forth herein.

227.     This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII"). Title VII prohibits Defendant from discriminating against and harassing its employees on the basis of their sincerely held religious beliefs.

228.     Plaintiffs hold sincerely held religious beliefs that preclude them from receiving the COVID-19 vaccine.

229.     At all times relevant, Defendant each employed at least fifteen (15) employees.

230.     Plaintiffs refused to receive the COVID-19 vaccine and informed Defendant FM&T of their religious objection to receiving the vaccine.

231.     Defendant refused to engage in an interactive process regarding the Plaintiffs' requests for reasonable accommodations to the COVID-19 vaccine mandate. Defendant have failed to engage in the interactive process with Plaintiffs regarding reasonable accommodations.

232.     Defendant's failure to provide reasonable accommodations to Plaintiffs has harmed and will continue to harm Plaintiffs.

233.     As a result of the failures to accommodate actions by Defendant, Plaintiffs suffered emotional distress.

234.     Defendant's actions were willful and done with malice.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their Prayer for Relief.

## COUNT II

**Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII")**

### *Religious Discrimination – Retaliation*

235.    Plaintiffs reallege and incorporate paragraphs 1-225 above as if fully set forth herein.

236.    This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII").

237.    At all times relevant, Defendant have been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and has at least fifteen (15) employees.

238.    Plaintiffs have sincere, religious beliefs that preclude them from taking a COVID-19 vaccine.

239.    Plaintiffs requested exemptions from Defendant's Mandate.

240.    In retaliation, Defendant required Plaintiffs to be tested weekly with punishment for non-compliance, wear discriminatory colored badges to denote that Plaintiffs were unvaccinated, be singled out to wear personal protective equipment when others did not have to, and to require social distancing between themselves and vaccinated employees.

241.    Defendant further put Plaintiffs on unpaid leave, terminated them, or constructively discharged them.

242.    As a result of Defendant's retaliation, Plaintiffs suffered emotional distress.

243.    Defendant's actions were willful and done with malice.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their Prayer for Relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for relief as follows:

A.      That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

B.      That the Court issue a Temporary Restraining Order restraining and enjoining FM&T, all its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice subjecting Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

C.      That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining FM&T, all its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice that subjects Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

D.      That this Court render a Declaratory Judgment declaring that FM&T's Mandatory COVID-19 Vaccination Policy, both on its face and as applied by FM&T, is illegal and unlawful under the Title VII; and further declaring that by terminating Plaintiffs from employment with

FM&T or by threatening to so terminate or remove Plaintiffs from their current positions, FM&T has unlawfully denied Plaintiffs their statutory rights under Title VII.

E.      That this Court award Plaintiffs and those similarly situated actual damages in an amount to be proven at trial, including those for pain and suffering, that Plaintiffs sustained as a result of FM&T's discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

F.      That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

G.      That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

H.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII.

I.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 14, 2024

By: /s/ Matthew S. Robertson
A.J. Stecklein         MO Bar #46663
Matthew S. Robertson    MO Bar #70442
STECKLEIN ROBERTSON LAW, CHTD.
1503 Westport Road
Kansas City, Missouri 64111
Telephone:   (913) 371-0727
Facsimile:   (913) 371-0727
Email: aj@srlawkc.com
       msr@srlawk.com

By: /s/ Brandon Hill
**LUIS A. CABASSA (*pro hac vice* forthcoming)**
Florida Bar Number: 0053643
Direct Dial: (813) 379-2565
**BRANDON J. HILL (*pro hac vice* forthcoming)**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**AMANDA E. HEYSTEK (*pro hac vice* forthcoming)**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Email: gdesane@wfclaw.com

**KATHRYN C. HOPKINSON (*pro hac vice* forthcoming)**
Florida Bar No.: 0102666
Direct Dial: 508-274-9169
**CURRAN ANTONELLI, LLP (*pro hac vice* forthcoming)**
400 North Tampa St, 15th Floor
Tampa, Florida 33602
 (617) 207-8670 ▪ (617) 850-9001 Fax
khopkinson@curranantonelli.com
Secondary Emails:
slevy@curranantonelli.com

ethompson@curranantonelli.com
filings@curranantonelli.com
***Counselors for the Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 14th day of May 2024, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice to all counsel of record.

<u>*/s/ Matthew S. Robertson*</u>
**Matthew S. Robertson #70442**