IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TALON WILDER, *et al.*, | ) |
| | ) |
|          Plaintiffs, | ) |
| | ) |
|     v. | ) Case No. 4:24-cv-00305-RK |
| | ) |
| HONEYWELL FEDERAL | ) |
| MANUFACTURING & | ) |
| TECHNOLOGIES, LLC, | ) |
| | ) |
|          Defendant. | ) |

**ORDER**

Before the Court is Defendant Honeywell Federal Manufacturing & Technologies, LLC's ("FM&T"), motion to dismiss Plaintiffs' second amended complaint. (Doc. 52.) This motion is fully briefed. (Docs. 53, 57, 58.) After careful consideration, and for the reasons stated below, FM&T's motion to dismiss is **GRANTED in part** and **DENIED in part**. Specifically, FM&T's motion to dismiss as to Count I is **DENIED**, as to Count II is **GRANTED**, and as to the remaining class allegations is **DENIED**.

**Background[1]**

Plaintiffs bring this case against FM&T for alleged violations of Title VII in relation to its COVID-19 vaccination mandate ("vaccine mandate") and corresponding exemption process and conditions. This case has a complicated procedural background, the details of which are largely irrelevant to the instant motion. It arises from two consolidated cases in the Middle District of Florida, from which some Plaintiffs were subsequently transferred to the Western District of North Carolina and then to the Western District of Missouri. (Docs. 29, 31, 37.) Plaintiffs comprise a group of current and former employees of FM&T who have been subject to FM&T's vaccine mandate. (Doc. 47 at ¶¶ 1, 12.) Plaintiffs filed their second amended complaint on May 14, 2024, asserting the following two claims: Count I – Title VII Religious Discrimination Failure to

---

[1] In considering FM&T's motion to dismiss, the Court accepts as true the well-pleaded facts in Plaintiffs' second amended complaint and construes them in the light most favorable to Plaintiffs as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

Accommodate; and Count II – Title VII Religious Discrimination Retaliation. (*Id.* at ¶¶ 226-43.) They also plead class allegations based on these claims. (*Id.* at ¶¶ 218-25.)

Around May 2021, FM&T imposed a company-wide vaccine mandate as prescribed by its parent company Honeywell International, Inc. ("Honeywell"), which required all of its employees to receive the COVID-19 vaccine. (*Id.* at ¶¶ 4, 13, 16.) In July 2021, vaccinated employees were given green badge holders, while FM&T mandated that unvaccinated employees wear a different color badge holder. (*Id.* at ¶¶ 22-23.)[2] FM&T informed employees that only unvaccinated employees had to wear masks and social distance in its facilities. (*Id.* at ¶ 24.) In September 2021, Honeywell informed unvaccinated employees—including those of FM&T—that "they would be terminated if they were not fully vaccinated by" either December 8, 2021, or December 8, 2022.[3] (*Id.* at ¶¶ 28, 30.) On September 25, 2021, FM&T informed its employees that those who did not receive the vaccine would be required to test weekly for COVID-19. (*Id.* at ¶ 29.)

In October 2021, employees received a corporate e-mail explaining how most employees subject to the vaccine mandate could apply for exemptions. (*Id.* at ¶ 35.) Employees could request exemptions for medical, religious, and other reasons; if they requested a religious exemption, employees had to answer additional questions in the exemption form, provide a "Third-Party Attestation Letter," and complete a supplemental information form. (*Id.* at ¶¶ 36-37.) Employees who received approval for an exemption were subject to the following conditions: wearing differently colored badge holders from vaccinated employees, wearing facial masks, social distancing, weekly COVID-19 testing, and being placed on unpaid leave in the event they failed to turn in test results weekly. (*Id.* at ¶ 60.) For those employees placed on unpaid leave, failure to come into compliance with the exemption conditions could lead to termination.

---

[2] Plaintiffs plead various facts about what color badge holder an unvaccinated employee had to wear. First, Plaintiffs allege that unvaccinated employees had to wear orange or red badge holders. (Doc. 45 at ¶ 23.) Later in the second amended complaint, Plaintiffs allege that unvaccinated employees had to wear white or yellow badge holders. (*Id.* at ¶ 60.) What is important for the present motion is that Plaintiffs allege vaccinated employees wore green badge holders while unvaccinated employees had to wear a different color.

[3] Plaintiffs' allegations are inconsistent regarding the date by which employees had to be fully vaccinated, or else face termination. (*Compare id.* at ¶ 28, *with id.* at ¶ 30.) This is one instance of many where Plaintiffs' complaint is internally inconsistent. However, the correct cutoff date for compliance is immaterial to the decision on FM&T's motion to dismiss. What is important is that the possibility of termination for noncompliance was first communicated in September 2021.

Plaintiffs object to the vaccine mandate, and to receiving the COVID-19 vaccine, on the basis of their sincerely held religious beliefs. Their "sincerely held religious beliefs are [their] (1) opposition to abortion and the use of fetal cell lines in the development of the vaccine; (2) belief that the mRNA technology utilized in some COVID-19 vaccines usurps God's creation of the human genome; and (3) that the body is a temple and taking the vaccine would defile that temple." (*Id.* at ¶ 62.)

Ten named Plaintiffs sought, and were granted, religious exemptions from the vaccine mandate.[4] Plaintiff Sanders' pleadings are silent on the issue, but do not plead that FM&T denied him an exemption. (*Id.* at ¶¶ 100-10.) Each Plaintiff complained to FM&T about the vaccine mandate, the exemption process and conditions, or both.[5] Plaintiffs plead the following harms: wearing color-coded badge holders, weekly testing, masking, unpaid leave,[6] termination,[7] constructive discharge,[8] and a denied promotion.[9]

Further facts are set forth below as necessary.

## Legal Standard

Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a

---

[4] Wilder (*id.* at ¶¶ 84, 87), Maldonado (*id.* at ¶¶ 114-15), Tuttle (*id.* at ¶ 124), Childress (*id.* at ¶¶ 135-36), Sorensen (*id.* at ¶¶ 146-47), Hartman (*id.* at ¶ 161), Ashford (*id.* at ¶ 174), Reed (*id.* at ¶ 187), Cumpton (*id.* at ¶ 198), and Salmond (*id.* at ¶ 210).

[5] Wilder (*id.* at ¶¶ 86, 88, 90-91), Sanders (*id.* at ¶¶ 102-07), Maldonado (*id.* at ¶¶ 116, 119), Tuttle (*id.* at ¶¶ 126-28), Childress (*id.* at ¶¶ 135-36), Sorensen (*id.* at ¶¶ 148-49, 152), Hartman (*id.* at ¶¶ 162, 164-65), Ashford (*id.* at ¶ 175), Reed (*id.* at ¶ 189), Cumpton (*id.* at ¶ 200), and Salmond (*id.* at ¶ 213).

[6] As to Wilder (*id.* at ¶ 93), Sanders (*id.* at ¶ 101), Tuttle (*id.* at ¶ 128), and Maldonado (*id.* at ¶ 115).

[7] As to Wilder (*id.* at ¶ 96), Sanders (*id.* at ¶ 101), and Tuttle (*id.* at ¶ 130).

[8] As to Maldonado (*id.* at ¶ 112), Childress (*id.* at ¶ 134), and Sorensen (*id.* at ¶ 154).

[9] As to Cumpton. (*Id.* at ¶ 202.)

3

defendant acted unlawfully to survive a motion to dismiss. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court generally "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, the principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. 662, 678 (2009).

## Discussion

Plaintiffs allege Title VII violations for religious discrimination based on disparate treatment for failure to accommodate and retaliation on behalf of themselves and a putative class. FM&T moves for dismissal of the entire second amended complaint.

### I. Count I: Religious Discrimination – Failure to Accommodate (Title VII)

In Count I, Plaintiffs allege that FM&T discriminated against them because of their religious beliefs in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Doc. 47 at ¶¶ 226-34.) They bring this disparate treatment claim under a failure-to-accommodate theory. Specifically, they allege that their religious beliefs—which they informed FM&T of—precluded them from receiving the COVID-19 vaccine in compliance with FM&T's vaccine mandate. While Plaintiffs do not plead that FM&T denied them exemptions from the mandate, (*id.* at ¶¶ 87, 100, 115, 124, 139, 147, 161, 174, 187, 198, 210), they nevertheless argue that FM&T did not engage in an interactive process regarding Plaintiffs' requests for accommodations and that FM&T ultimately failed to provide reasonable accommodations. (*Id.* at ¶ 231.)

#### A. Applicability of the Law-of-the-Case Doctrine

As an initial matter, this Court must decide whether it must follow the previous order on Honeywell's and FM&T's motions to dismiss from the Middle District of Florida, which were ruled on while ten of the instant named Plaintiffs were still part of that proceeding.[10] (*See* Doc. 57-2.) Generally, "[t]he law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings." *Mosley v. City of Northwoods*, 415 F.3d 908, 911 (8th Cir. 2005). However, this "doctrine only 'applies to decisions

---

[10] Salmond is a new Plaintiff in the second amended complaint.

4

Case 4:24-cv-00305-RK    Document 65    Filed 10/24/24    Page 4 of 16

made on appeal,' not to situations in which a district court changes its mind while a case is pending." *Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1085 n.2 (8th Cir. 2024) (citing *Mosley*, 415 F.3d at 911). Additionally, FM&T's instant motion to dismiss is premised on Plaintiffs' second amended complaint, which differs from the complaint considered in the previous motion to dismiss. (*See* Doc. 14 (first amended complaint).) For those reasons, this Court conducts its analysis anew.[11]

### B. Title VII Failure to Accommodate Law

Title VII prohibits employers from discriminating against their employees because of religion. 42 U.S.C. § 2000e-2(a)(1). Specifically, an employee's religious beliefs cannot be a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. 2000e-2(m). "The term 'religion' includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. 2000e(j).

Title VII religious discrimination claims may proceed under various theories, including a failure-to-accommodate theory such as the one Plaintiffs assert here. The Eighth Circuit has a three-part test for a Title VII disparate treatment claim brought under a failure-to-accommodate theory:

> [Employees] must show [1] that they have a bona fide religious belief that conflicts with an employment requirement; [2] that they informed [employer] of this belief; and [3] that they were disciplined for failing to comply with the conflicting requirement of employment.

*Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024). The language of the third element is sometimes stated as showing that the plaintiff "suffered an adverse employment action for failing to comply with the requirement." *See Curless v. Evergy Metro, Inc.*, No. 23-cv-00376-WBG, 2023 WL 8582587, at *3 (W.D. Mo. Dec. 11, 2023) (citing *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003)).

---

[11] This Court's decision would ultimately remain the same on the failure-to-accommodate claim even if the law-of-the-case doctrine applied. As to elements one and two, it agrees with the Middle District of Florida that they are plausibly supported by the facts pled. The Court reconsiders element three in light of an intervening change of law, an exception to the doctrine. *See Roberts v. Harley Davidson Fin. Servs.*, 611 F. Supp. 3d 761, 766-67 (W.D. Mo. 2020) ("Generally, a court will not reconsider an issue that has already been decided in a case unless . . . an intervening change of law occurs . . . ." (citing *Bethea v. Levi Strauss & Co.*, 916 F.2d 453, 457 (8th Cir. 1990))).

5

Once a prima facie case is established,[12] the burden then shifts to the employer to show "that it offered the employee a reasonable accommodation or that doing so would cause undue hardship." *Collins v. Tyson Foods, Inc.*, 665 F. Supp. 3d 845, 856 (D. Ky. 2023). Moreover, "[t]he reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006) (citations omitted); *see also Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1100, 1113 (8th Cir. 2024) ("Any inquiry as to whether [defendant] offered [plaintiff] a reasonable accommodation . . . is generally not appropriately considered at the motion to dismiss stage.").

FM&T concedes that Plaintiffs have alleged facts showing Plaintiffs hold bona fide religious beliefs that conflict with its vaccine mandate. (Doc. 53 at 1 ¶ 3.) Further, FM&T does not contest the second element—that Plaintiffs informed FM&T of their beliefs—in its arguments. The Court finds Plaintiffs plausibly pled facts supporting that they informed FM&T of their beliefs.[13] Therefore, the Court turns to the third element—whether Plaintiffs were disciplined, or faced adverse employment action, for failing to comply with the vaccine mandate.

### C. Element 3: Adverse Employment Action

FM&T argues that Plaintiffs fail to plausibly plead facts supporting they suffered an adverse employment action for failing to comply with the vaccine mandate because no Plaintiff alleges FM&T denied them an exemption. (Doc. 53 at 4.) FM&T contends that requiring compliance with exemption conditions cannot be a basis for adverse employment action because Plaintiffs do not allege religious objection to those conditions (or do so only in conclusory fashion), and because the conditions are imposed due to vaccination status, rather than religious status. (Doc. 53 at 6.) Plaintiffs respond by arguing that—under the new standard for showing adverse employment action in Title VII discrimination cases announced in *Muldrow v. City of St. Louis*,

---

[12] The Court notes that "a plaintiff need not plead facts establishing a prima facie case for their Title VII claim" at the motion to dismiss stage. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021). "However, the elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit.'" *Id.* (cleaned up).

[13] Each Plaintiff, with the exception of Sanders, applied for a religious exemption from the mandate. *See supra* note 4. This indicates FM&T had knowledge of their religious beliefs. Sanders plausibly pleads that, at the very least, he began to engage with the exemption process and complained to FM&T about that process on the basis of his religious beliefs. (Doc. 47 at ¶ 103.)

6

144 S. Ct. 967 (2024)—the conditions imposed on them because of their religious exemptions to the vaccine mandate plausibly support the adverse employment action element. (Doc. 57 at 2-5.)

The Supreme Court recently announced a relaxed standard for showing an adverse employment action in employment discrimination cases, *see Muldrow*, 144 S. Ct. 967, which the Eighth Circuit explained as follows:

> "An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. The Supreme Court recently obviated the requirement—replete in our case law—that the claimed injury be 'significant,' 'material,' or 'serious.' After *Muldrow*, [plaintiff] is only required to plead 'some harm respecting an identifiable term or condition of employment.'"

*Cole*, 105 F.4th at 1114 (citing *Muldrow*, 144 S. Ct. at 974, 975 n.2) (reversing dismissal of disparate treatment claim after finding plaintiff plausibly pled adverse action under *Muldrow*).

The Court finds *Cole* applicable to the case at hand. In *Cole*, the plaintiff brought a disparate treatment and failure-to-accommodate claim against her employer because her religious beliefs conflicted with the employer's vaccine mandate. *Id.* at 1112. The employer gave her an exemption from the vaccine mandate but imposed various conditions on the exemption such as wearing a colored badge and being reassigned to different work areas. *Id.* The plaintiff alleged that, as a result, she was singled out, subject to scorn and ridicule, and began attending meetings via Zoom. *Id.* at 1112-13. The Eighth Circuit ultimately analyzed this case in the traditional disparate treatment context, since she pled both theories.[14] It reversed the district court's dismissal of the plaintiff's disparate treatment claim over defendant employer's objections. *Id.* at 1115.

The employer in *Cole* first argued that the plaintiff did not plead any religious objection to the accommodations it offered her. In response, the Eighth Circuit noted that "this argument is relevant to the reasonableness of the accommodation, not to whether [plaintiff] is a member of a protected class." *Id.* at 1114. In other words, this argument did not pertain to the prima facie case for disparate treatment. In the present case, some Plaintiffs plead that the accommodations themselves also violated their religious beliefs and some Plaintiffs do not; for those who allege the accommodations violated their religious beliefs, FM&T argues they do so only in conclusory

---

[14] The Eighth Circuit also noted that a failure to accommodate "while actionable, is not a freestanding cause of action under Title VII." *Cole*, 105 F.4th at 1113 (citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-73 (2015) (explaining the only two causes of action under Title VII are disparate treatment and retaliation and analyzing an employee's failure to accommodate claim as a disparate treatment claim)).

fashion. Regardless, in light of *Cole*, the Court finds that whether Plaintiffs had a religious objection to the accommodations themselves goes to the reasonableness of the accommodations and is not a proper consideration at the motion to dismiss stage. *Id.* at 1113.

The employer in *Cole* next argued that the plaintiff failed to allege an adverse employment action. The Eighth Circuit found that whether the changes in employment conditions that the plaintiff alleged (i.e., the exemption conditions) "resulted in 'some harm' to a term or condition of Cole's employment requires further factual development." *Id.* at 1114. The court ultimately found that "[d]ismissal of the complaint on the basis of no adverse action is improper at this stage of the proceedings." *Id.* at 1114 (citing *Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001) (finding that "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution"). Here, Plaintiffs plead a number of potential adverse employment actions including having to wear color-coded badge holders, weekly mandatory testing, being placed on unpaid leave, and even termination. FM&T argues that these effects result from being unvaccinated, not from religious status, and that all unvaccinated employees were treated the same. However, *Cole* is once again informative. There the Eighth Circuit rejected a similar argument finding that "we must grant all reasonable inferences in Cole's favor and cannot assume at this early juncture that religious discrimination did not occur because one subset of potential comparators [those with vaccine exemptions for reasons besides religion] also faced disparate treatment." *Id.*

FM&T cites *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652 (N.D. Tex. 2023), to support its contention that testing and masking requirements alone do not constitute adverse employment actions. *Sambrano*, however, predates the relaxed standard announced in *Muldrow*.

In *Sambrano*, the court dismissed a Title VII case for failure to plead a more than "de minimis" adverse employment action, where the only adverse actions the plaintiffs pled were masking and testing requirements. In dismissing the claim, the *Sambrano* Court cited Fifth Circuit precedent from before *Muldrow* and applied a "*de minimis*" standard. *Id.* at 663. The court went on to state that "the '*de minimis*' and 'materiality' standards are one and the same. Materiality is a shorthand characterization of the well-established *de minimis* standard." *Id.* at 663-64. The Court thus finds this case unpersuasive as it failed to properly account for the rejection of a materiality standard announced in *Muldrow*. Each Plaintiff, at the very least, plausibly pled mandatory weekly testing as an adverse employment action.

8

In light of *Cole* and *Muldrow*, the Court finds that Plaintiffs sufficiently pled adverse employment action in support of their failure-to-accommodate claims. Therefore, FM&T's motion to dismiss the second amended complaint as to Count I is **DENIED**.

## II. Count II: Religious Discrimination – Retaliation (Title VII)

In Count II, Plaintiffs allege that FM&T retaliated against them for engaging in protected activity, such as complaining to FM&T that its vaccine mandate was contrary to their sincerely held religious beliefs, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Doc. 47 at ¶¶ 235-43.)

### A. Title VII Retaliation Law

Title VII prohibits employers from discriminating, or retaliating, against their employees because they have "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). The term "opposed" "carries its ordinary meaning: to resist or antagonize; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (cleaned up).

In order to prove a claim for Title VII retaliation, a "plaintiff must prove (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action." *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023). However, "given that this 'prima facie model is an evidentiary, not a pleading standard,' the complaint's allegations must only 'give plausible support' to these elements" at the motion to dismiss stage. *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1055 (8th Cir. 2024) (citations omitted).

FM&T challenges Plaintiffs' showing on each of the elements. Having found facts which plausibly support adverse employment action above (which Plaintiffs incorporate into their retaliation claims),[15] the Court turns to whether Plaintiffs' allegations plausibly support finding that protected activity was the cause of the alleged adverse employment actions.

---

[15] Before *Muldrow*, the Supreme Court had held that Title VII's anti-retaliation provision protects employees from a broader range of adverse actions than Title VII's anti-discrimination provision. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("We therefore reject the standards . . . that have limited actionable retaliation to so-called 'ultimate employment decisions.'") However, *White* goes on to announce a "materially adverse" standard in the context of retaliation claims. *Id.* at 67-68. *Muldrow* did not contain a retaliation claim, and the Court did not indicate an intention to overrule *White*. *See Muldrow*, 601 U.S. 346, 348. However, recognizing that employees are protected from a broader range of adverse actions under the retaliation provision, this Court finds that the same laundry list of adverse employment actions that plausibly support Plaintiffs' failure-to-accommodate claim also plausibly support the retaliation claim, regardless of whether *Muldrow*'s relaxed standard extends to retaliation.

9

## B. Element 1: Protected Activity

FM&T argues Plaintiffs fail to plead protected activity. Finding the issue of causation dispositive, the Court does not make a definitive finding of whether Plaintiffs adequately plead facts supporting a finding of protected activity. It does, however, set forth the basic principles regarding protected activity, since this element is closely intertwined with causation.

"Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII ('the opposition clause'), or participating in an investigation under Title VII ('the participation clause')." *Hunt v. Neb. Pub. Power. Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Plaintiffs must also attribute the complained-of conduct to discrimination. *See Hunt*, 282 F.3d 1021. Additionally, Plaintiffs must have an "objectively reasonable belief an actionable Title VII violation has occurred for the complaint to qualify as a protected activity." *Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1064 (8th Cir. 2020) (citation omitted).

Plaintiffs plead instances where they complained to FM&T about the vaccine mandate and exemption conditions and argue that their complaints to FM&T adequately support finding protected activity. (Doc. 57 at 22-24.) Based on their brief in opposition to FM&T's motion to dismiss, it also appears Plaintiffs contend that making the exemption requests themselves qualify as protected activity. (*See* Doc. 57 at 25 (citing Doc. 47 at ¶ 74 which states that the weekly testing regimen was not established until after employees like Plaintiffs requested exemptions).) Other courts have recently found that requesting an accommodation alone is not a protected activity. *See Anderson v. Honeywell Int'l*, No. 23-1518 (DFW/ECW), 2023 WL 6892023, at *2 (D. Minn. Sept. 11, 2023) ("[R]equesting a religious accommodation is not a protected activity under Title VII." (citation omitted)), *summarily aff'd*, No. 23-3274, 2023 WL 11019644 (8th Cir. Dec. 1, 2023). At the motion to dismiss stage, and for the purpose of analyzing causation alone, the Court assumes that Plaintiffs have plausibly pled protected activity in the form of their complaints to FM&T; it rejects Plaintiffs' implied contention that applying for religious exemptions alone qualifies as protected activity.

## C. Element 3: Causation

FM&T argues that the Plaintiffs' complaint does not plausibly allege causation because of a fundamental timing problem: For retaliation to exist, a plaintiff's protected activity must have occurred prior to the defendant's retaliatory adverse employment action. FM&T argues that

10

Plaintiffs' allegations reverse that sequence, as they allege adverse employment actions based on policies that were in effect *before* any Plaintiff's protected activity, such that the adverse actions cannot be the result of retaliation for protected activity. (Doc. 53 at 12-13.) This argument applies both generally as to all Plaintiffs and their challenge to the exemption conditions and specifically as to the subset of Plaintiffs alleging constructive discharge. In addition, FM&T makes a related timing argument as to Plaintiff Cumpton who alleges a failure to promote.[16]

Plaintiffs must allege sufficient facts to give plausible support to a causal connection between their opposition, or protected activity, and the adverse employment actions they allege are retaliatory. "Generally, something more than temporal proximity is required to establish the necessary causal connection. . . . If the complaint relies on mere temporal proximity and contains no additional allegations of causation, the time between the protected activity and adverse action must be 'very close.'" *Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 950 (8th Cir. 2024) (citation omitted) (affirming dismissal of Title VII retaliation claim for lack of causation where plaintiff failed to provide a date of the protected activity, and a generous reading of the complaint put one to two months between the protected activity and adverse employment action).

### 1.  Exemption Conditions

Plaintiffs attempt to establish causation through temporal proximity. The facts pled in the second amended complaint include the following, organized chronologically to demonstrate Plaintiffs' failure to plead facts plausibly supporting causation:

- May 2021 – FM&T announces its vaccine mandate. (Doc. 47 at ¶¶ 4, 16.)
- July 2021 – FM&T mandates color-coded badge holders, masking, and social distancing for unvaccinated employees. (*Id.* at ¶¶ 22-24.)
- September 2021 – Honeywell sends an email stating employees—including those of FM&T—will be terminated if not fully vaccinated by December 8, 2022 [2021]. (*Id.* at ¶¶ 28, 30.)
- September 25, 2021 – FM&T informs "employees that those who did not receive a vaccine would be required to test weekly." (*Id.* at ¶ 29.)
- October 2021 – Employees receive an e-mail explaining how to apply for exemptions. (*Id.* at ¶ 35.)

---

[16] The parties make additional arguments regarding causation. For instance, FM&T argues seven Plaintiffs fail to identify dates of adverse employment actions, protected activity, or both, and that this failure does not allow the Court to determine whether the temporal proximity is sufficiently close to reasonably infer causation. (Doc. 11 at 17.) The Court need not address these additional arguments, as the causation issues discussed are sufficient to resolve the instant motion.

- October 2021 – Plaintiffs begin to request religious exemptions and make complaints to FM&T that the vaccine mandate and exemption conditions are religious discrimination.[17]

The Court finds that, based on the facts pled in Plaintiffs' complaint, FM&T's vaccine mandate and related exemption conditions were implemented and communicated to Plaintiffs prior to their applications for religious exemptions and any subsequent complaints of discrimination. Therefore, even assuming Plaintiffs pled protected activity, the adverse actions Plaintiffs attribute to FM&T's alleged retaliation could not have been caused by Plaintiffs' protected activity. *See Lundstrom v. Contra Costa Health Servs.*, No. 22-cv-06227-CRB, 2022 WL 17330842, at *6 (N.D. Cal. Nov. 29, 2022) ("[Defendant's] COVID-19 policies were in place before [plaintiff] opposed the testing, mask-wearing, and vaccination requirements. . . . Thus, it is unreasonable to infer that there was a causal connection . . . ."); *Mullen v. Astrazeneca Pharms., LP*, No. 23-3903, 2023 WL 8651411, at *5 (E.D. Pa. Dec. 14, 2023) (finding plaintiff failed to plead causation where "the basis for his termination was conveyed to Plaintiff and his former colleagues prior to Plaintiff's request for a religious accommodation: the Defendant implemented a mandatory vaccination policy for all persons not afforded a religious or disability accommodation, and noncompliance by a specified deadline would result in termination").

Plaintiffs counter that they plead "the weekly testing regimen did not exist at all until employees like Plaintiffs *requested exemptions*." (Doc. 47 at ¶ 74 (emphasis added).) However, the rest of their complaint conflicts with this statement, at least as to the named Plaintiffs, as the timeline above shows. Additionally, requesting an accommodation alone is not a protected activity. *See Anderson*, 2023 WL 6892023, at *2. Therefore, even accepting as true Plaintiffs' conflicting pleadings, paragraph 47 does not plausibly support causation because it does not

---

[17] Plaintiffs requested exemptions as follows—October 2021: Wilder, Tuttle, Hartman, Ashford, Cumpton, and Salmond (*id.* at ¶¶ 84, 124, 161, 174, 198, 210); November 2021: Sorensen (*id.* at ¶ 146); December 2021: Sanders (*id.* at ¶ 101); unclear timing: Maldonado, Childress, and Reed (*id.* at ¶¶ 112, 134, 187).

Based on the facts pled, the Court notes the earliest date each Plaintiff complained to FM&T: Wilder on December 20, 2021 (*id.* at ¶ 86), Sanders on October 28, 2021 (*id.* at ¶ 103), Maldonado on June 3, 2022 (*id.* at ¶ 116), and Sorensen on November 11, 2021 (*id.* at ¶ 149).

Hartman made his first complaint of religious discrimination concurrently with applying for the exemption in October 2021. (*Id.* at ¶ 162.)

Tuttle, Childress, Ashford, Reed, Cumpton, and Salmond did not specifically plead any dates on which they complained to FM&T. Reading the complaint as if facts are set forth chronologically, each requested their exemption prior to or concurrently with making their earliest complaint.

12

connect the imposition of weekly testing to protected activity. The true point of comparison for establishing causation is when each Plaintiff first opposed—through, for example, a complaint to FM&T—a Title VII violation. Plaintiffs allege such opposition, but the dates of these events are generally later than the requests for religious exemptions and also post-date the implementation of FM&T's vaccine mandate and exemption condition policies.

The Court finds that no Plaintiff plausibly pleads facts supporting that they engaged in protected activity prior to FM&T's implementation of the vaccine mandate and its exemption conditions. Therefore, the adverse actions relating to the vaccine mandate and exemption conditions could not reasonably have been caused by Plaintiffs' protected activity. *See Lundstrom*, 2022 WL 17330842, at *6; *Mullen*, 2023 WL 8651411, at *5.

### 2. Constructive Discharge

Three Plaintiffs—Maldonado, Childress, and Sorensen—complain of constructive discharge. These constructive discharge claims are premised on the same adverse employment actions as discussed above. Reading the complaint in a light favorable to Plaintiffs, each allege some adverse actions that preceded their alleged constructive discharge. For example, Plaintiff Maldonado was placed on unpaid leave for failing to comply with the weekly testing condition and received daily emails warning of termination if he did not comply with the vaccine mandate. (Doc. 47 at ¶¶ 115, 118.) However, these policies were in effect prior to Plaintiffs' protected activity. Plaintiff Maldonado did not complain about the testing requirement until June 3, 2022. (*Id.* at ¶ 116.) Therefore, even assuming Plaintiffs plausibly pled constructive discharge, the same causation issue arises in that the constructive discharges—caused by policies FM&T implemented prior to Plaintiffs engaging in any protected activity—could not reasonably be caused by Plaintiffs' protected activity.

### 3. Failure to Promote

Plaintiff Cumpton uniquely pleads that she was denied a promotion in May 2022, which was instead given to a vaccinated employee who lacked experience for the position. (*Id.* at ¶ 202.) Cumpton received a religious exemption in December 2021. Under a favorable reading of the complaint, sometime between December 2021 and May 2022 "Plaintiff Cumpton complained about the disparate treatment she received to Defendant's Human Resources on account of her religious beliefs." (*Id.* at ¶ 200.) Plaintiff Cumpton provides no further facts as to the timing of this potentially protected activity. Reading Plaintiff Cumpton's allegations as if they are set forth

13

chronologically indicates at least some passage of time between the complaint and adverse action. Plaintiff Cumpton has failed to "establish causation beyond the speculative level," because she does not provide a date of the alleged protected activity in relation to the adverse employment action. *Meinen*, 101 F.4th at 951 n.2 (finding plaintiff "did not plead sufficient facts to give rise to an inference of causation beyond mere speculation" because he did not provide a date for the protected activity). Nor does she provide a basis for causation apart from temporal proximity.

Like Plaintiff Cumpton, the other Plaintiffs rest their case for causation on temporal proximity. For those Plaintiffs' claims, this approach fails because the policies the adverse actions arise from predate any protected activity. While Plaintiffs need not plead a prima facie case at the motion to dismiss stage, their claims for retaliation are not plausibly pled because the facts do not establish causation beyond mere speculation, and it is unreasonable to infer FM&T retaliated in violation of Title VII when the adverse employment actions Plaintiffs attribute to retaliation predate protected activity. Therefore, FM&T's motion to dismiss Count II is **GRANTED**.

### III. Class Allegations

Finally, FM&T argues the Court should dismiss Plaintiffs' class allegations at the motion to dismiss stage because it showed that the class, on its face, cannot be certified.[18] Based on the Court's ruling above as to FM&T's motion to dismiss for failure to state a claim, the relevant remaining claim involving putative class allegations is Count I – Title VII religious discrimination for failure to accommodate. *See Drew v. Lance Camper Mfg. Corp.*, 21-cv-05066-RK, 2021 WL 5441512, at *5 (W.D. Mo. Nov. 19, 2021) (recognizing corresponding class allegations are dismissed when named Plaintiffs' claims are dismissed and discussing motion to strike class allegations in the context of the surviving claims). As a general matter, most district courts encountering motions to strike class allegations at the motion to dismiss stage decline to do so. *See Legacy Gymnastics, LLC v. Arch Ins.*, No. 2:20-cv-04214-NKL, 2021 WL 2371503, at *3 n.4 (W.D. Mo. June 9, 2021) (collecting cases). "The only instances in which district courts have granted motions to strike class allegations at this stage are circumstances in which the defendant has shown that the plaintiff will not be able to satisfy Rule 23 despite discovery." *Id.* "In other words, a court should strike class allegations from a pleading when 'it [is] apparent from the

---

[18] Courts consider such requests in the context of both Rule 12(b)(6) (failure to state a claim) and 12(f), which permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See Rogowski v. State Farm Life Ins.*, No. 22-cv-00203-RK, 2022 U.S. Dist. LEXIS 240452, at *11 (W.D. Mo. Sept. 14, 2022) (quoting Rule 12(f)).

14

pleadings that [the plaintiff] could not certify a class.'" *Rogowski v. State Farm Life Ins.*, No. 22-cv-00203-RK, 2022 U.S. Dist. LEXIS 240452, at *11 (W.D. Mo. Sept. 14, 2022) (quoting *Donelson v. Ameriprise Fin. Servs. Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021)).

Plaintiffs seek to represent the following class:

> All FM&T current or former employees who (1) between May of 2021 and the present objected to FM&T's Mandate because of sincerely held religious beliefs or disability exemption and/or accommodation from its Vaccine Policy requiring COVID-19 vaccination; and (2) who were placed on unpaid administrative leave, discharged, constructively discharged, retaliated against, or resigned, due to their religious beliefs against the COVID-19 vaccine.

(Doc. 47 at ¶ 219.)

First, FM&T argues that the class cannot be certified because there are individualized inquiries. This misstates a basic requirement of a class action—that there be a common issue or even predominance, but not a complete lack of individualized issues. *See* Fed. R. Civ. P. 23(a)(2) (commonality); 23(b)(3) (predominance); *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (cleaned up)). Plaintiffs have sufficiently pled common issues. (Doc. 47 at ¶ 221.)

Second, FM&T asserts that Plaintiffs cannot satisfy the 23(a)(3) typicality requirement because the class includes employees with disability exemptions while named Plaintiffs all requested religious exemptions and bring claims relating only to religious discrimination. The Court agrees this is a typicality concern, but nevertheless declines to dismiss the class allegations. Plaintiffs have presented a class definition, but "they are not bound to it and may present something different in a formal motion." *In re Folgers Coffee*, No. 21-md-02984-BP, 2021 U.S. Dist. LEXIS 253793, at *13 (W.D. Mo. Dec. 28, 2021) (citing *Jones v. Monsanto Co.*, No. 19-cv-0102-BP, 2019 WL 9656365, at *9 (W.D. Mo. June 13, 2019)). Since, based on the pleadings, named Plaintiffs' claims would be typical of other employees with religious exemptions, the Court does not perceive an inability to certify a class meeting the typicality requirement at this stage.

FM&T next argues that the class is fail-safe because it is defined in a way that "precludes class membership unless the class member would prevail on the merits," and thus the class allegations should be dismissed. *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). While a fail-safe class is ultimately barred from certification, the Court will not strike the class allegations on this basis at this early stage. Class definitions may be modified by the party as discovery progresses and in its formal motion at the class certification stage, or by the Court any time prior

15

to judgment, to avoid this pitfall. *See In re Folgers Coffee*, 2021 U.S. Dist. LEXIS 253793, at *13; *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) ("[T]he district court has the power to amend the class definition at any time before judgment.").

Finally, FM&T claims Plaintiffs cannot make out a 23(b)(2) class because they seek individualized damages. This too could be avoided by redefining the class, modifying the relief sought, or seeking 23(b)(3) certification as discovery progresses. The Court also notes that 23(b)(2) classes may not wholly bar recovery of monetary damages that are incidental to the injunctive relief sought. *See. Dukes*, 564 U.S. at 366 (leaving the door open to certification of 23(b)(2) classes with incidental damages).

Ultimately, FM&T has not shown that the class allegations are so deficient as to warrant striking them at this early stage. FM&T's Rule 23 "arguments would be better addressed at the class certification stage after discovery yields more information," Plaintiffs have had a chance to modify their class definition and present it in a formal motion, and when the Court has additional briefing as to the Rule 23 requirements in front of it. *Legacy Gymnastics, LLC*, 2021 WL 2371503, at *3. FM&T's motion to dismiss Plaintiffs' remaining class allegations is **DENIED**.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, FM&T's motion to dismiss Plaintiffs' second amended complaint for failure to state a claim under Rule 12(b)(6), (Doc. 52), is **GRANTED in part** and **DENIED in part** as follows:

(1) As to Count I, FM&T's motion to dismiss Plaintiffs' claims under Title VII for Religious Discrimination Failure to Accommodate is **DENIED**.

(2) As to Count II, FM&T's motion to dismiss Plaintiffs' claims under Title VII for Religious Discrimination – Retaliation is **GRANTED** and Count II is **DISMISSED**.

(3) Finally, FM&T's motion to dismiss Plaintiffs' remaining putative class allegations is **DENIED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 24, 2024